Good morning, Your Honors. May it please the Court, Lawrence Slater appearing for the appellant, and those would be the defendants in the case. I wanted to highlight a couple things in the brief that I thought maybe were important, from our view, for having you focus. In this case, the bankruptcy was filed by the corporation, the corporate debtor, and the plaintiff in the case is a creditor of the corporation that had promissory notes. The defendants are the owners, shareholders of the corporation, and the situation is that there were a series of loans from this creditor to the corporation over some years, and then these loans came about in 1999-2000. No principal was paid, but over a two-year period, they were extended and interest paid on the notes. And the view that we have is that under these circumstances, there was no fraud or misrepresentation or anything wrongful to these plaintiffs done by the defendants. The loans were defaulted. The plaintiffs sued in state court, and then the corporation filed bankruptcy, and then the creditors filed the alter ego claim against the shareholders. And then through the discovery process, they found that guess what? The formalities of the corporation were not followed. There was self-dealing. Taxes were unpaid. Tax returns not filed. It was undercapitalized. But there was no fraud or misconduct against these complaining parties. Well, you keep saying there was no fraud. Isn't that a question here? Because the Robertsons took money out for their own personal use. It's a possibility that that might be deemed fraudulent. Well, while we say that might be deemed fraudulent, misconduct on the corporation, but not misconduct directly to the plaintiff, to Ducharme. And so the – if there's an injury. Well, if they deplete the resources of the corporation, it does affect. Right. As it affects all creditors. Creditors, there's no question. I'm making a distinction between an act injuring a single creditor who then sues on their personal injury or something that generally damages the corporation. And we do think that's an important distinction in applying the laws here. We did cite to you a number of cases in Arizona that say that if you have a corporation that's undercapitalized, that in itself is not enough to have an alter ego claim, breach of a contract where you didn't pay them, that's not enough. They don't follow the corporate formalities, self-dealing. None of those things have been held enough in Arizona for the creditor to have a claim against the individuals. Well, okay. Are we agreed that we're really dealing with the question of Arizona law? Yes. And what would you characterize that question to be? Yeah. Controlling issue under Arizona law. On the part of this for whether there's a valid claim, and, of course, we have an issue about whether this is exclusively a claim that only the trustee can pursue, but just on the claim itself is that we believe that the rule of law stated in the Nash case is the one, is the BAP case that had reviewed all of the Arizona laws and said that there's two elements to an alter ego claim. One is the alter ego misuse of the corporation, and second is that it results in a fraud or an injustice amounting to fraud on the complaining party. And what they have found in surveying the Arizona cases is that any time somebody got found liable, they found some fraud or misconduct on that complaining party, even though the words of the standard say fraud or injustice. And what we have concerned is that if only injustice is a standard, then there would no longer be any known protection for the owners of the corporation in that anybody who didn't get paid by the corporation could then sue, the corporation's bankrupt. Sotomayor, I understand that, but isn't it pretty clear here that the corporation borrowed money when it was, when the, is it the Robertsons that are the owners? Yes. When they knew that the corporation was insolvent, couldn't pay it back? Right. And assuming that even to be accurate and not disputed, that would cause damage to the company and make it unable to pay any of its creditors, which would be a claim that would be pursued by the trustee. I'm going to the point. Now you're shifting the issue, though. I'm just going to the point of is there some, well, something between, something, some wrongdoing here on the part that would justify piercing the corporate veil. And I just ask, isn't it undisputed that they borrowed money when they knew that the corporation couldn't pay it back? Right. And I'm saying that undercapitalized or breach of contract, notifying formalities, self-dealing, those kind of things have been held as not enough. That's not enough. That's not enough in Arizona to, to pierce the corporate veil to, because the shareholders are protected unless there's something more. And what I'd want to do to. The question was, is it undisputed that they borrowed, that they borrowed the money when they knew that the corporation couldn't pay it back? Yeah. That I don't, I don't know that I would say is undisputed. I think the fact of undercapitalization was determined after the court was filed and, and the, the plaintiffs hired somebody to go through all the books because there was not adequate recordkeeping to determine that. And then he said, look here, they're upside down by 450,000. That was a determination made in the course of the proceeding. Oh, okay. They didn't have accurate records in order to know whether they could pay it back. Right. Right. Yeah. And again, I would say to you that inaccurate records, look in the, you know, Chatwin case. There's other Supreme Court Arizona cases.  But the corporation wasn't paying taxes. The corporation wasn't paying taxes. Exactly. Right. Obviously, the Robinsons knew because they were running the corporation. Okay. The corporation was taking loans, and then they were taking money out of the corporation. Okay. But I'm saying that that's not an alter ego claim where they become liable to, to a, a contract creditor of the corporation. I'd also, I just wanted to, if I could discuss with you this Gatecliff case that was used by the district court in our case, and that we have the Nash case which says that they, in the BAP, had evaluated all the Arizona cases, and nobody gets held liable, shareholders, for, for debts of the creditor unless there's injustice amounting to fraud on the creditor. And then the Gatecliff case came down and made a decision and said the legal standard for alter ego is injustice or fraud. And the district court said, well, look at that. That's overruling maybe. It's a later case, the Nash case, and it overrules it. And I just sort of want to point out that I would disagree with that conclusion. And I stated that in my brief. But, but what I'm looking at is the Gatecliff case stated the, the law as stated referring to a 1957 and a 19, I think, 1970 case. And so it referred to the older cases that had been established way prior to Gatecliff. And it was a case that did involve an injustice amounting to fraud on the plaintiff in that case. It, it followed what, where there could be liability as, as said under the Nash case, and that is that a lady had an insurance claim, and she needed to make a notice of claim to the insurance company. And there were two companies, and she was confused over which one she had to give the notice to. And, and she was in danger of, of losing her claim because of the confusion caused by the company. And, and so the, the decision is that, that this was an alter ego case where the two companies can be treated as one and her notice to one company is valid notice to the other. We would look at that as a case of an injustice to this lady amounting to fraud and that it would not overrule the Nash case. And I think that counsel on the other side would agree that if the Nash case is a correct interpretation of the law in Arizona, that his client cannot maintain a claim against the Robertsons without proof of, of fraud. But as I read your brief, you asserted that there is no Arizona case that clearly addresses whether a corporation can pierce its own veil. Why isn't Jones dispositive? Right, right. And that would be, that's the other issue, and I appreciate you bringing that up. Because this comes down to the issue of whether this claim is an asset of the estate that only the trustee can pursue or whether creditors can pursue it. And what I would have you look at here is that it's not disputed that there's no Supreme Court case in Arizona. There are numbers of other States, and I've got Texas, Virginia, Ohio, Nevada, California, Missouri, where they had directly made decisions that in those States a corporation can pierce its own veil and those would-be claims of the trustee. There are other lines of cases, and I would say that Jones and Teelburg, that's the one case, that that's a case in a different, different kind of problem. Our case is a situation of whether a creditor can sue the corporation to pierce a corporate veil based on wrongdoing. There are cases, and there's an early detection center case that I had referenced that had cited this Jones and Teelburg as authority, and it uses the expression corporation by estoppel. And it's a situation where a corporate officer gets benefits from having the corporation, and then when the corporate status is inconvenient, he tries to deny the corporation. In that type of situation, a corporate estoppel, he's not able to pierce the veil of the corporation in that circumstance. And that was the situation in the Jones v. Teelburg case where it did rely on a Crabtree, a Louisiana case, and that was a corporate estoppel case. Jones and Teelburg was followed by early detection center, which cited a case from Alaska, Arizona being Jones and Teelburg, and a California case, all of them where they say in the circumstance where an officer benefits from the corporation and then when it's convenient to him doesn't want to have the existence of the corporation, he can't do that. And I'll say that that's not artfully said, but that's the corporate estoppel idea. Sotomayor, I'm not, I don't understand. If the district court should not have looked, and the bankruptcy court should not have looked to the Jones v. Teelburg case, then what should they have looked to to come the other way? I don't understand. If the Jones v. Teelburg case is a case where there's no corporate wrongdoing alleged, then that's not a, that's not a That wasn't like, okay, just leave it as a, what should the, what should the court have looked to to say that the Arizona Supreme Court would reach the other side? Right. To look at the Texas, Virginia, Ohio, these other States that have done it, look how the other States have done it. And I would also, there's an Arkansas and a Michigan case that I would refer you to where in each of those cases the court looked in it, and in those cases they had what I would call a third prong for an alter ego case in that. That's going outside of Arizona. Should this case be certified to the Arizona Supreme Court, since there's no clear law in Arizona? Well, I suppose procedurally that's something you could do, but I think that the function here is to make a judgment on how would Arizona court decide on a case where, and I would say corporate wrongdoing alleged, not the situation in the Jones and Teelburg case. But you're saying it's a case as in all sorts of other States. Where corporate wrongdoing is alleged. Okay. Okay. And I'll, I'll hope I can reserve a couple minutes. You may reserve the rest of your time. Good morning, Your Honors. My name is Tim Barnes from Phoenix, and I will say that it is quite an honor to be here standing in front of the three of you, and I appreciate that opportunity. I thought long and hard about how would I present this argument to the court. And of course, I'm standing in a federal court, and I practice in both federal courts and state courts, but I respectfully submit to this court that this, this case is decided upon the strength of the state law of Arizona. There are three issues presented by the appellant. The first is whether or not the claim of the alter ego claim that my client Elaine Ducharme asserted belongs to the bankruptcy estate of ECH. This court knows well that the Butner case has said many times, the Butner case has been cited many times for its proposition that state law controls whether or not a property right belongs to the estate or belongs to somebody other than the estate. And state law, Butner says, we need to follow state law because whether you're in the state court or you're in the federal court, we need some uniformity in terms of what the property rights of different people are. And that uniformity should not be then impacted by the fact, Butner says, that one of the parties happens to be in bankruptcy. The analysis is the same whether we're standing in the district court or I'm standing in the bankruptcy court to look at state law. And I believe that the state law here, then, is obviously Arizona's state law. Now, in this instance, there is no Arizona Supreme Court case that says that only third parties may bring a claim. That's the the such that is the situation. That is a reality. There is an intermediate appellate court in the Jones v. Teelborg case. And Jones v. Teelborg is an interesting situation for those of us from Phoenix. It's a famous situation, yes. And so from that standpoint, there obviously were the plaintiffs in that case who were lawyers suing the defendants in that case who were their former partners, asserting to use the Alter Ego case to go against the individual defendants as opposed to simply the corporation. And the court of appeals said, look, in Arizona, the Alter Ego is there for the benefit of third parties, and therefore, that's what Arizona law is. Now, the court obviously goes through the analysis to predict whether or not the state court would follow that particular ruling by the intermediate court. In this instance, Jones v. Teelborg's review was denied, and that's apparent from the case. So the Arizona Supreme Court certainly had the opportunity to reach down and change that result if it had chosen. Sotomayor, one of the things that bothers me, if we, if Arizona, if we should determine that Arizona should adopt the rule that a corporation can pierce its own veil, in future bankruptcies involving corporations in Arizona, would the bankrupt state have to consider whether they should automatically go ahead and pierce the corporate veil and seek assets from, in certain corporations, seek assets from the stockholders in order to create a bankruptcy estate that's going to better satisfy the debtors? Well, Your Honor, if I might, Judge Roth, that's certainly an opportunity for corporations that are in Chapter 7s, which is typically where you'll see that with the trustee, of course, pursuing that, as opposed to a Chapter 11 where perhaps the individuals against whom the action would be brought would be the principles of the Chapter 11 debtor in possession. However, even in the cases cited by the appellants in which the courts have said that the corporation can pierce its own veil, even in those cases, for the most part, those cases recognize that if a particular creditor has been particularly harmed by the corporation, the corporation may pursue its alter ego claim. And I cite to the Court the Chappin case, I believe is how it's pronounced. It's a Utah case, appellants A&R versus Chatton, which is at 89-BR-898. And at page 902, that's a 1988 district court case. And I'm quoting now from the case. Nevertheless, these principles, and those are the principles which said that a corporation can pursue its own alter ego claim, do not preclude actions against corporate insiders by creditors who've been specifically harmed by their wrongful conduct. Such personal claims are not part of the bankruptcy estate. And so it seems that those are outside creditors. Those are outside of bankruptcy, just as my client. This action, Judge Nelson, was originally filed in the State court against the corporation and the individual. So it started as an alter ego case from its inception. And that was the cause of going into bankruptcy? Well, sort of. Or one of them? The debtor, the corporation filed bankruptcy, Chapter 11. The case was not removed until, and I don't recall the time well, Your Honor, but I believe it was many months later, perhaps as much as a year, just before the matter was set to go to trial in the State court. It was removed to the Federal court, to the bankruptcy court. It's related to the proceeding. Counsel, before time runs out, I want to ask you a question that I should have asked your opposing counsel. He kept citing to the Nash case, saying that fraud was required. But there's a more recent case, Gatecliff, which says that the bail can be pierced if it would sanction a fraud or an underlying or promote injustice. What do you say about the Gatecliff case as opposed to Nash? Well, and that, of course, is what the, Judge Nelson, that, of course, is what we've cited in our briefs as being a clear indication that Nash was decided incorrectly, initially by a very respected bankruptcy judge, George Nelson, and then subsequently by the Ninth Circuit BAP. They said that no modern Arizona case had ever found on anything other than fraud, is what Nash holds for. And, of course, five years later, the Gatecliff case comes down, and that's the Arizona Supreme Court. And it is talking about injustice. Now, counsel suggests that somehow the injustice amounted to fraud. Well, you can look all you want as to what constituted the basis, the factual basis. That was a summary judgment case. And so, of course, we do not know what the end result would be, because it simply allowed, the Supreme Court allowed, the Arizona Supreme Court allowed the case to return to the trial court to proceed to trial. But the fact remains that the Arizona Supreme Court said injustice is what we need. The defendants, excuse me, the appellants cite these other cases, a Texas case, a Utah case, a California case, and so forth, that says that the bankruptcy trustee may bring that claim. And they cite specifically, and in some, with some vigor, the Davey Roofing case. And the Davey Roofing case is a bankruptcy case out of the Central District, which involved California. And in Davey Roofing, the bankruptcy court cited to a California appellate case, Stodd v. Goldberger, in which the California State Court had ruled that the corporation may, in fact, pierce its own corporate veil. And so the cases relied upon by appellants to support the notion that somehow the trustee has his claim are based upon the underpinning of state law in which the state law allows a corporation to pierce its own veil. And so from that perspective, I believe that Arizona law is correct, excuse me, is the controlling law. Jones v. Teelborg is the best indication I think the court will find. And the Arizona Supreme Court chose not to review that case. The second issue that the appellants raise is whether or not — Of course, there should have been any number of reasons for that. Thank you. Okay. And certainly I understand that, and I'm not suggesting it was the only reason. I understand. But nonetheless, the Arizona court has had — the Arizona Supreme Court and the Arizona courts of appeals have had a number of instances involving alter ego, and most all of those alter ego cases do tend to be commercial cases of one type or another, because that's, of course, typically what corporations are involved in. Appellants suggest that we're required to prove fraud. Appellants suggest that proving that they took money out of the corporation by itself is not enough to establish alter ego. Arizona has two elements to alter ego. You must first prove that, in fact, the corporate entity is the alter ego of the owners of the entity, whether that's an individual or a corporation. And that's the first element. And there are a number of Arizona cases in which the court said, well, you proved that, in fact, the element — excuse me — the first element was proven, and that is that the corporation is the alter ego of the individuals. But unless you prove the second element, then you've not proved an alter ego. And — and the second element, then, is that to observe the corporate form would somehow promote a fraud — excuse me — would somehow encourage a fraud or promote injustice. And so it's that — the combination of the two elements that must be proven to establish alter ego in Arizona, and in many other states, that's the law as well. Those are the elements. But in this instance, there are cases — and I'd suggest the Court look at the — if I can pronounce it correctly — the Izzy-Nantan, I-z-e-n-a-n-t-a-n, where the corporation was undercapitalized, and the trial court tipped its hat, as did the appellate court, to the fact that the corporation was undercapitalized. However, that only proved the first element. That did not prove the second element, that there was some type of fraud or injustice. Was that case cited in your brief? I'm sorry? Yes, that case is in — it's in my brief, and I believe it's in the appellant's brief as well. All right. Thank you. Arizona clearly requires fraud or injustice. And there has never been the right to rely upon proof — a requirement for a defendant that the plaintiff prove common-law fraud. That's not even suggested by the defendants, by the appellants in this case. In my brief and in my supplemental appendix to the case — to my brief, I gave the Court a brief — a section of a reply brief of appellants at the district court in which they acknowledged that my client was not obligated to prove the nine common-law elements of fraud in order to sustain an alter ego claim. And so, if fraud — the nine elements of common-law fraud are not required, then what is the requirement for fraud? And when you read the cases, the Arizona cases, they talk about promoting an injustice. And in fact, the Youngren case, which is a 1976 Arizona court of appeals decision, has circumstances not identical but very close to identical to ours, in which the plaintiff made a promissory note along with the — excuse me — the stockholder. The corporation filed bankruptcy. The stockholder went to trial as a defendant. And the jury found, in the Youngren case, that the corporation was financially insolvent. The shareholder appreciated the financial difficulty of the corporation. And those were unjust circumstances upon which alter ego could be found by the jury. Now, would you agree that if we say fraud is required, lower court made no findings on fraud and made the — we would have to remand for findings. If you're going to go on the injustice theory, a remand would not be required. I assume you'd prefer if we decide to do that. Your Honor, there is no finding of fraud, and I understand that. All right. Thank you. Which is not to say there aren't facts upon which they could be found, but there is no finding of fraud. All right. And the last point in my last minute in less than a half a second — a half a minute, I'd like to talk about the Arizona attorneys' fees statute, which is the third arm of which Arizona law applies. Arizona, like many states, has a statute that allows attorneys' fees to be awarded in an action arising out of a contract, expressed or implied. There does not have to be, and there are attorneys' fees have been awarded in situations where there is no contract, but the allegation is there was some type of contractual — some type of contractual relationship, and when the defendant proved that there was no contract, the court said nonetheless you're entitled to an award of attorneys' fees because it's an action arising out of contract. Alter ego is not a claim unto itself. Alter ego is simply a mechanism by which either a tort claim, if one is brought, or a contract claim, if one is brought, may be pursued against the shareholders or the owners of the alter ego entity in this case. In our situation, we brought a contract claim for breach of the failure to pay the promissory notes against the corporation and alleged that the shareholders were liable as well because they — the corporation was their alter ego. Therefore, this is an action arising out of the contract. And the contract has an attorneys' fees provision? Yes. The loan, underlying loan. Okay. I think we understand your position and you've used your time. Thank you very much. Thank you. Counsel, I wanted to ask you about the gate cliff claims. Would you comment on the gate cliff claims that came after Nash? Yeah. The view that we have on the gate cliff case is that it — it did come after the Nash case. By five years, and it was a Supreme Court decision in Arizona. Right. And the Nash was a bankruptcy decision. Right. Right. And — but the issue that I would ask you to look at is did this change anything? Did it overrule the Nash case? And I would say no. I would say look at the authority that it did. How did it decide what the legal standard was? And I checked. It was a 1972 case and a 1957 case. So it just restated the old law that was the same law used by the Nash case. And I would have you look at these — sorry. Well, I was just going to say that gate cliff is a 1991 case. Yes. And you're saying it would have to expressly overrule a bankruptcy case? No, no. I'm saying that it's consistent with the bankruptcy case and it doesn't change it. All right. Okay. Because even though — the bankruptcy case, the Nash case said, look, all the cases say injustice amounting to fraud, and — but whenever there's liability, there's always an injustice amounting to fraud. But it said in gate cliff fraud or — Or injustice. Sorry. I said that wrong. All the older cases up to Nash said injustice or fraud. Nash then looked at all the cases where people were found liable and said always when they found somebody liable, they found an injustice amounting to fraud. Then comes gate cliff and says fraud or injustice. And in fact, there's an injustice amounting to fraud in that case. And there may be here, too. And there may be here, too, although it's not found by the judge. I understand. And I want to point out the Younggreen case is a tricky one because there's a — specifically said a question to the jury, was there fraud, and they said no. But if you look at the appeal, it says it right in there that in this case on appeal, they still upheld it saying that we need to find a fraud, and there may have been a fraud in the record in that this is a situation where money was borrowed or credit extended, never paid, and it could have been found that there was never an intent to pay, and that could amount to a fraud. So that was a finding that is in there. I'd also want to ask you, the Chatham case, A&R versus Chatham, the Utah case that counsel also cited, it's a bankruptcy case, Utah. It does talk about Section 541, which is the bankruptcy code, and gives a policy position that it should be read broadly. All right. You have used your time. I have. Okay. They were in the red. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning and for this week, and the Court stands adjourned. This court is in session and stands adjourned. Thank you.
judges: Schroeder, Nelson, Roth